**HERMAN JONES LLP**
SERINA M. VASH
153 Central Avenue #131
Westfield, NJ 07090
svash@hermanjones.com
Telephone: (404) 504-6516
Facsimile: (404) 504-6501

[Additional Counsel on Signature Page]

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VISWANATHA PALEMPALLI, Derivatively on Behalf of COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, | Case No. |
| Plaintiff, | VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, UNJUST ENRICHMENT, AND VIOLATION OF SECURITIES LAW |
| v. | |
| MICHAEL PATSALOS-FOX, JOHN N. FOX, JR., MAUREEN BREAKIRON-EVANS, LEO S. MACKAY, JR., ZEIN ABDALLA, FRANCISCO D'SOUZA, KAREN MCLOUGHLIN, RAJEEV MEHTA, GORDON J. COBURN, STEVEN SCHWARTZ, RAMAKRISHNAN CHANDRASEKARAN, JOHN E. KLEIN, JONATHAN CHADWICK,  THOMAS M. WENDEL, LAKSHMI NARAYANAN, and ROBERT E. WEISSMAN, | |
| Defendants, | |
| -and- | |
| COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, a Delaware Corporation, | |
| Nominal Defendant. | DEMAND FOR JURY TRIAL |

Plaintiff Viswanatha Palempalli, located at 1485 Freesia Way, Beaumont, California, by his attorneys, submits this Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, Unjust Enrichment, and Violation of Securities Law.  Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to plaintiff which are based on personal knowledge.  This Complaint is also based on the investigation of plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder derivative action brought by plaintiff on behalf of nominal defendant Cognizant Technology Solutions Corporation ("Cognizant" or the "Company") against certain of its officers and directors for breach of fiduciary duty, waste of corporate assets, unjust enrichment, and violation of securities law.  These wrongs resulted in hundreds of millions of dollars in damages to Cognizant's reputation, goodwill, and standing in the business community.  Moreover, these actions have exposed Cognizant to billions of dollars in potential liability for violations of state and federal law.

2.      In order to entice foreign investment, beginning in 2000, India created areas known as "Special Economic Zones," or "SEZs."  SEZs offer special tax exemptions and holidays, decreased business regulations, infrastructure investment, and credit opportunities.  Because of their benefits, SEZ licenses are difficult to obtain.

3.      As set forth below, Cognizant's top executives, including its former Chief Executive Officer ("CEO"), directly engaged in a scheme to bribe Indian officials in order to facilitate construction within one of India's SEZs and reap the SEZ benefits.  Bribing foreign

officials is a direct violation of the Foreign Corrupt Practice Act of 1977, as amended, 15 U.S.C. §§78dd-1, *et seq.* (the "FCPA").  While its top executives were engaged in this behavior, the Company represented to investors at all times that it had not violated any laws to in order obtain the benefits it received, nor committed any impropriety in annual Sustainability Reports which reported no incidents of corruption.  The Sustainability Reports were disseminated publicly via Cognizant's website in 2014 and 2015.   The Company also made these or similar misrepresentations to the SEC through its Quarterly and Annual Reports, which misrepresented Cognizant's financial results as a result of the benefits bestowed by the illegally obtained SEZ licenses.

4.      On September 30, 2016, Cognizant announced it had commenced an internal investigation into improper payments made to foreign officials in violation of the FCPA "and other applicable laws."  The press release announced that the Company's President, defendant Gordon J. Coburn ("Coburn"), and Chief Legal Officer, defendant Steven Schwartz ("Schwartz") resigned from their positions.  The Company's stock price fell substantially on that date, falling from $55 per share on September 29, 2016, to $47.71 per share on September 30, 2016, a drop of over 13%, representing a loss of $4.4 billion.  Before this disclosure, however, the Company was in the midst of a massive repurchase, spending over $800 million to repurchase its own stock at inflate prices between February 2015 and September 2016.

5.      In its Quarterly Report on Form 10-Q for the third quarter of fiscal 2016, filed with the SEC on November 7, 2016, Cognizant admitted that:

> [W]e did not maintain an effective tone at the top as certain members of senior management may have participated in or failed to take action to prevent the making of potentially improper payments by either overriding or failing to enforce the controls established by the Company relating to real estate and procurement principally in connection with permits for certain facilities in India.

6.      On an earnings conference call on February 8, 2017, the Company disclosed it found yet additional improper payments.  It explained that the total amount of improper payments reached $6 million.  Further, in the 2016 Annual Report on Form 10-K filed with the SEC on March 1, 2016, Cognizant disclosed that the bribery scheme began as far back as 2010.

7.      On February 15, 2019, the Company agreed to pay $25 million to the SEC in order to settle allegations arising from its violations of the FCPA.  The SEC also charged defendants Coburn and Schwartz with approving the illicit payments.  In addition, to date, Cognizant has paid tens of millions of dollars in legal bills defending these defendants, as well as and others responsible for the illicit bribery scheme.  On September 16, 2019, the Company's former Chief Operating Officer ("COO") agreed to pay $50,000 to settle charges that he helped authorize and conceal a bribe paid to an Indian official.

8.      Over the next couple days as the market absorbed this disclosure, Cognizant's market capitalization fell nearly $1.3 billion, going from $73.56 per share on February 15, 2019, to $71.34 per share on February 21, 2019.

9.      Further, as a direct result of this unlawful course of conduct, Cognizant is now a defendant in a federal securities class action lawsuit filed in the U.S. District Court for the District of New Jersey on behalf of investors who purchased Cognizant's shares.  On August 8, 2018, the court denied the defendants' motion to dismiss that action, in substantial part.  Further, on June 5, 2020, the court denied the defendants' motion to dismiss the second amended complaint in that action.

10.     On April 29, 2019, plaintiff made a litigation demand on the Cognizant Board of Directors (the "Board") concerning the damage done to the Company as a result of the violations

of the FCPA and the false and misleading statements (the "Litigation Demand").[1]  The Litigation Demand detailed the FCPA violations known at that time, the misstatements made by the Company in its Quarterly and Annual Reports that it filed with the SEC, as well as the damage done to Cognizant and its stockholders.

11.      In a letter dated June 13, 2019, counsel for a claimed "Special Demand Review Committee" (the "Demand Review Committee") of the Board informed plaintiff that: (i) the Demand Review Committee recommended that the Board reject the Litigation Demand; and (ii) the Board voted to accepted that recommendation  (the "Rejection Letter").[2]  The Rejection Letter was a mere three pages and only contained perfunctory details about the Demand Review Committee's purported review of the Litigation Demand.  In fact, the Rejection Letter did not contain any substantive discussion of factual or legal underpinnings of the Demand Review Committee's findings and recommendations.

12.      The Rejection Letter attached a letter it sent to a different stockholder rejecting that stockholder's litigation demand.  While the letter was likewise perfunctory in its rejection, it did state that the Demand Review Committee planned to remain constituted for at least a year to continue to consider events in on-going related government and civil litigation.

13.      On January 28, 2020, plaintiff sent an inspection demand to the Company, which was received on January 30, 2020 (the "Inspection Demand").[3]  In the Inspection Demand, plaintiff explained that he wished to investigate the Board's decision to reject his Litigation Demand, a well-established proper purpose.  The Inspection Demand complied with all of the form and

---

[1] A true and correct copy of the Litigation Demand is attached hereto as Exhibit A.

[2] A true and correct copy of the Rejection Letter is attached hereto as Exhibit C.

[3] A true and correct copy of the Inspection Demand is attached hereto as Exhibit D.

manner requirements under title 8, section 220 of the Delaware General Corporation Law Code ("Section 220"), including being accompanied by a power of attorney, an oath, and proof of plaintiff's current ownership of Cognizant stock.

14.     The Company, however, refused to provide the requested material.  As a result, on February 28, 2020, plaintiff filed an action in the Court of Chancery of the State of Delaware seeking to compel the requested documents.  On July 27, 2020, the Company and plaintiff reached a settlement, whereby it agree to produce all documents, redacted for privilege and relevance, responsive to the following document requests:

1.  All meeting minutes of the Board or committee of the Board tasked with reviewing the Demands (the "Review Committee") where the Demands were discussed or evaluated.

2.  The meeting minutes of the Board or Review Committee concerning the potential appointment of a special committee tasked with investigating the allegations in the Demands.

3.  Any written report or presentation to the Board or Review Committee concerning the Demands.

4.  All documents reviewed or relied upon by the Board or Review Committee concerning the Demands.

5.  The engagement letters of any experts retained by the Board or Review Committee concerning the Demands.

15.  ███████████████████████████████████████

████████████████████████████████████████████

██████   ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



16.     In light of the Board's wrongful refusal, plaintiff now brings this action.

## JURISDICTION AND VENUE

17.     Pursuant to 28 U.S.C. §1331 and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), this Court has jurisdiction over the claim asserted herein for violations of section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.  This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. §1367.

18.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

19.     Venue is proper in this Court in accordance with 28 U.S.C. §1391 because: (i) Cognizant maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary

participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Cognizant, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

**Plaintiff**

20.     Plaintiff Viswanatha Palempalli was a stockholder of Cognizant at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Cognizant stockholder.

**Nominal Defendant**

21.     Nominal defendant Cognizant is a Delaware corporation with principal executive offices located at 300 Frank W. Burr Boulevard, Teaneck, New Jersey.  Cognizant provides information technology ("IT"), consulting, and business process services worldwide including, but not limited to, business, process, operations and IT consulting, application development and systems integration, enterprise information management, application testing, application maintenance, IT infrastructure services, and business process services.  As of the end of 2020, the Company had approximately 289,500 employees, the majority of which reside in India.

**Defendants**

22.     Defendant Michael Patsalos-Fox ("Patsalos-Fox") is Cognizant's Chairman of the Board and has been since September 2018 and a director and has been since July 2012.  Cognizant paid defendant Patsalos-Fox the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2016 | $103,500 | $104,949 | $104,998 | $313,447 |
| 2015 | $78,041 | $104,960 | $104,995 | $287,996 |

23.     Defendant John N. Fox, Jr. ("Fox") is a Cognizant director and has been since December 2007.  Cognizant paid defendant Fox the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2016 | $103,500 | $104,949 | $104,998 | $313,447 |
| 2015 | $78,041 | $104,960 | $104,995 | $287,996 |

24.     Defendant Maureen Breakiron-Evans ("Breakiron-Evans") is a Cognizant director and has been since May 2009.  Defendant Breakiron-Evans is the Chair and a member of Cognizant's Audit Committee and has been since at least April 2015.  Cognizant paid defendant Breakiron-Evans the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2016 | $140,500 | $104,949 | $104,998 | $350,447 |
| 2015 | $104,849 | $104,960 | $104,995 | $314,804 |

25.     Defendant Leo S. Mackay, Jr. ("Mackay") is a Cognizant director and has been since September 2012.  Defendant Mackay is a member of Cognizant's Audit Committee and has been since at least April 2015.  Cognizant paid defendant Mackay the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2016 | $106,500 | $104,949 | $104,998 | $316,447 |
| 2015 | $79,541 | $104,960 | $104,995 | $289,496 |

26.     Defendant Zein Abdalla ("Abdalla") is a Cognizant director and has been since September 2015.  Defendant Abdalla was a member of Cognizant's Audit Committee from September 2015 to at least April 2019.  Cognizant paid defendant Abdalla the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2016 | $114,000 | $104,949 | $104,998 | $323,947 |

| 2015 | $30,884 | $74,759 | $74,780 | $180,423 |

27.     Defendant Francisco D'Souza ("D'Souza") was a Cognizant director from January 2007 to March 2020; Executive Vice Chairman from April 2019 to June 2019; CEO from January 2007 to April 2019; President from January 2007 to February 2012; Chief Operating Officer from December 2003 to December 2006; Vice President, North American Operations and Business Development from March 1998 to November 1999; Direct, North American Operations and Business Development from June 1997 to March 1998; Consultant from January 1996 to June 1997; and Cofounder in 1994 when Cognizant started as a division of The Dun & Bradstreet Corporation.  Cognizant paid defendant D'Souza the following compensation as an executive:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|--------------|----------------------------------------|------------------------|-------|
| 2016 | $664,300 | $7,018,671 | $450,332 | $123,337 | $8,256,640 |
| 2015 | $645,000 | $10,483,400 | $778,306 | $44,677 | $11,951,383 |

28.     Defendant Karen McLoughlin ("McLoughlin") was an employee assisting with transition at Cognizant from September 2020 to December 2020; Chief Financial Officer from February 2012 to September 2020; Senior Vice President of Finance and Enterprise Transformation from February 2010 to January 2012; Senior Vice President of Finance from August 2008 to January 2010; and Vice President of Global Financial Planning and Analysis from October 2003 to August 2008.  Cognizant paid defendant McLoughlin the following compensation as an executive:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|--------------|----------------------------------------|------------------------|-------|
| 2016 | $426,500 | $1,875,841 | $289,126 | $7,950 | $2,599,417 |
| 2015 | $406,000 | $2,801,868 | $489,910 | $7,950 | $3,705,728 |

29.     Defendant Rajeev Mehta ("Mehta") was Cognizant's advisor to the new CEO from April 2019 to May 2019; President from September 2016 to April 2019; CEO of IT Services from

December 2013 to September 2016; Group Chief Executive, Industries and Markets from February 2012 to December 2013; and other management positions of increasing responsibility from 2001 to 2012.  Cognizant paid defendant Mehta the following compensation as an executive:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|--------------|----------------------------------------|------------------------|-------|
| 2016 | $574,100 | $3,584,397 | $389,284 | $5,750 | $4,553,531 |
| 2015 | $538,500 | $5,353,875 | $649,795 | $1,500 | $6,543,670 |

30.     Defendant Gordon Coburn ("Coburn") was Cognizant's President from February 2012 to September 2016; COO from January 2007 to February 2012; Chief Financial Officer and Treasurer from March 1998 to February 2012; Executive Vice President from December 2003 to December 2006; Senior Vice President from November 1999 to December 2003; Vice President from 1996 to November 1999; and Senior Director of Group Finance and Operations from November 1996 to December 1997.  Defendant Coburn is named as a defendant in a related amended securities class action complaint that alleges he violated section 20(a) of the Exchange Act.  Cognizant paid defendant Coburn the following compensation as an executive:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan Compensation | All Other Pension and Nonqualified Deferred Comp. | All Other Compensation | Total |
|------|--------|--------------|----------------------------------------|---------------------------------------------------|------------------------|-------|
| 2016 | $467,039 | $3,750,637 | - | $183,891 | $93,416 | $4,494,983 |
| 2015 | $613,500 | $5,602,186 | $740,296 | ($76,165) | $89,178 | $6,968,995 |

31.     Defendant Schwartz was Cognizant's Executive Vice President, Chief Legal and Corporate Affairs from December 2013 to November 2016; Senior Vice President and Secretary from July 2007 to December 2013; General Counsel from March 2003 to December 2013; Vice President from April 2002 to July 2007; and Chief Corporate Counsel from October 2001 to March 2003.  Defendant Schwartz is named as a defendant in a related amended securities class action

- 10 -

complaint that alleges he violated sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

32.     Defendant Ramakrishnan Chandrasekaran ("Chandrasekaran") was Cognizant India's Executive Vice Chairman from December 2013 to March 2019.  Defendant Chandrasekaran was also Cognizant's Group Chief Executive of Technology and Operations from February 2012 to December 2013, and held other positions of increasing responsibility from 1999 to 2012.

33.     Defendant John E. Klein ("Klein") was Cognizant's Chairman from December 2003 to September 2018, and a director from March 1998 to March 2020.  Defendant Klein was a member of Cognizant's Audit Committee from at least April 2015 to at least April 2019.  Cognizant paid defendant Klein the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2016 | $285,000 | $104,949 | $104,998 | $494,947 |
| 2015 | $230,486 | $104,960 | $104,995 | $440,441 |

34.     Defendant Jonathan Chadwick ("Chadwick") was a Cognizant director from April 2016 to December 2019.  Cognizant paid defendant Chadwick the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2016 | $118,315 | $120,470 | $120,517 | $359,302 |

35.     Defendant Thomas M. Wendel ("Wendel") was a Cognizant director from June 2001 to June 2017.  Defendant Wendel was a member of Cognizant's Audit Committee from at least April 2015 to at least April 2017.   Cognizant paid defendant Wendel the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2016 | $115,500 | $104,949 | $104,998 | $325,447 |
| 2015 | $84,041 | $104,960 | $104,995 | $293,996 |

36.     Defendant Lakshmi Narayanan ("Narayanan") was a Cognizant director from December 2003 to June 2017.  Defendant Narayanan was also Cognizant's Vice Chairman from January 2007 to at least March 2017; Executive Vice Chairman from January 2007 to November 2014; CEO from December 2003 to December 2006; President from March 1998 to December 2006; and COO from March 1998 to December 2003.  Cognizant paid defendant Narayanan the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2016 | $90,000 | $104,949 | $104,998 | $299,947 |
| 2015 | $69,041 | $104,960 | $104,995 | $278,996 |

37.     Defendant Robert E. Weissman ("Weissman") was a Cognizant director from May 2001 to December 2017.  Cognizant paid defendant Weissman the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2016 | $118,500 | $104,949 | $104,998 | $328,447 |
| 2015 | $88,849 | $104,960 | $104,995 | $298,804 |

38.     The defendants identified in ¶¶27-32 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶22-27, 33-37 are referred to herein as the "Director Defendants."  The defendants identified in ¶¶24-26, 33, 35-36 are referred to herein as the "Audit Committee Defendants."  Collectively, the defendants identified in ¶¶22-37 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

39.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe Cognizant and its stockholders fiduciary obligations of care

and loyalty, and were and are required to use their utmost ability to control and manage Cognizant in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Cognizant and not in furtherance of their personal interest or benefit.

40.     To discharge their duties, the officers and directors of Cognizant were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Cognizant were required to, among other things:

(a)     conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(b)     remain informed as to how Cognizant conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

**Breaches of Duties**

41.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Cognizant, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

42.     The Individual Defendants breached their duty of loyalty by allowing defendants to cause, or by themselves causing, the Company to engage in the FCPA violations, making false statements, and engaging in the excessive repurchase, improper practices that wasted the Company's assets, and caused Cognizant to incur substantial damage.

43.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Cognizant, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, Cognizant has expended, and will continue to expend, significant sums of money.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

44.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

45.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) deceive the investing public, including stockholders of Cognizant, regarding the Individual Defendants' management of Cognizant's operations; (ii) secure benefits through improper and illegal means; and (iii) enhance the Individual Defendants' executive and directorial positions at Cognizant and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions.  In

furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

46.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

47.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## DEFENDANTS VIOLATE THE FCPA AND
## MAKE A SERIES OF IMPROPER STATEMENTS

48.     Cognizant helps companies outsource their IT and other business practices.  More than half the Company's employees are located in India, a country during the relevant period that was known as one of the most corrupt countries in the world for doing business and where bribery, kickbacks, and other types of improper payments were common.  At the same time, the FCPA forbid covered companies like Cognizant from making such improper payments.  In addition, the FCPA required Cognizant and similar companies to design, maintain, and administer internal controls and accounting systems that would detect and deter improper payments to foreign officials.

49.     Cognizant admits it violated the FCPA.  In particular, on September 30, 2016, Cognizant announced an internal investigation regarding improper payments made to foreign

officials in violation of the FCPA "and other applicable laws."  The press release announced that the Company's President, defendant Coburn, resigned from his position as of September 27, 2016, without explanation after twenty years of senior management at Cognizant.  In its Quarterly Report on Form 10-Q for the third quarter of fiscal 2016, filed with the SEC on November 7, 2016, Cognizant admitted that:

> [W]e did not maintain an effective tone at the top as certain members of senior management may have participated in or failed to take action to prevent the making of potentially improper payments by either overriding or failing to enforce the controls established by the Company relating to real estate and procurement principally in connection with permits for certain facilities in India.

50.     On an earnings conference call on February 8, 2017, the Company disclosed it found yet additional improper payments.  It explained that the total amount of improper payments reached $6 million.  Further, in the 2016 Annual Report on Form 10-K filed with the SEC on March 1, 2016, Cognizant disclosed that the bribery scheme began in 2010.

51.     On February 15, 2019, the SEC announced that it charged Cognizant and defendants Coburn and Schwartz with FCPA violations.  The SEC's action revealed a series of misconduct, including that in 2014, a senior government official of the Indian state of Tamil Nadu demanded a $2 million bribe from the construction firm responsible for building the Company's 2.7 million square foot campus in Chennai, India.  Defendants Coburn and Schwartz authorized the contractor to pay the bribe and then directed their subordinates to conceal the bribe by doctoring the change orders for construction services or materials.  The Company also approved two additional bribes totaling more than $1.6 million.

52.     The SEC action further disclosed that defendant Coburn also signed false management representations letters and lied to Cognizant's auditor.  In addition, defendants Coburn and Schwartz also made false and misleading subcertifications in the management

representation letters made in connection with the Company's Quarterly and Annual Reports filed with the SEC between July 2014 and January 2016.

53.     The SEC explained that defendants Coburn and Schwartz were able to proceed with their plan because the Company "failed to implement sufficient internal accounting controls … designed to detect and prevent such misconduct."

## COGNIZANT'S FALSE STATEMENTS

54.     Defendants Coburn and Schwartz were able to accomplish their plan by making false and misleading statements in the Company's filings.  The false statements fall into three categories: (i) false statements concerning the financial investment and benefits from the SEZs; (ii) false statements concerning the Company's anticorruption compliance and training; and (iii) the overstatement of earnings by capitalizing bribes that should have been expenses.

55.     In the Company's SEC filings, it reported the benefits and investments Cognizant made in SEZs—figures that were overstated because they included several million dollars' worth of illicit payments to Indian government officials.  In particular, Cognizant's 2014 Annual Report on Form 10-K filed with the SEC on February 27, 2015 (the "2014 Form 10-K"), described the "income tax holiday benefits" that Cognizant's "Indian subsidiaries" had received from the "Indian government" as follows:

> Our Indian subsidiaries collectively referred to as Cognizant India, are primarily export-oriented and are eligible for certain income tax holiday benefits granted by the Indian government for export activities conducted within Special Economic Zones, or SEZs, for periods of up to 15 years. Changes in Indian tax laws that would reduce or deny SEZ tax benefits could have a material adverse effect on our business, results of operations and financial condition.
>
> *          *          *
>
> [A]s of December 31, 2014, we had outstanding fixed capital commitments of approximately $20,452 [in thousands] related to our India real estate development program to build new Company-owned state-of-the-art IT development and

- 17 -

delivery centers. … [W]e have constructed and expect to continue to locate most of our newer development facilities in SEZs.

56.     Defendants D'Souza, McLoughlin, Klein, Narayanan, Wendel, Weissman, Fox, Breakiron-Evans, Patsalos-Fox, and Mackay signed the 2014 Form 10-K.

57.     On May 4, 2015, Cognizant filed its Quarterly Report on Form 10-Q for the first quarter of fiscal 2015 with the SEC, which repeated the statements from the 2014 Form 10-K.  The Company continued to repeat these statements in each Quarterly Report thereafter until the scheme was revealed in late 2016.

58.     On February 25, 2016, the Company filed its 2015 Annual Report on Form 10-K with the SEC (the "2015 Form 10-K").  In addition to repeating the statements referenced above, the Company quantified the "effect of the income tax holidays granted by the Indian government" as follows:

> For the years ended December 31, 2015, 2014 and 2013, the effect of the income tax holidays granted by the Indian government was to reduce the overall income tax provision and increase net income by approximately $201.4 million, $183.0 million and $146.3 million, respectively, and increase diluted [earnings per share] by $0.33, $0.30 and $0.24, respectively.

59.     Defendants D'Souza, McLoughlin, Klein, Narayanan, Wendel, Weissman, Fox, Breakiron-Evans, Patsalos-Fox, Mackay, and Abdalla, signed the 2015 Form 10-K.

60.     Second, the Company claimed in its Sustainability Reports publicly disseminated via Cognizant's website in 2014 and 2015, that it had established robust policies and procedures to ensure legal and ethical compliance, including extensive training and "risk analysis surveys covering all business units and corporate functions to assess the likelihood of various risks including corruption."  Based on these representations, the Company specifically stated that no confirmed incidents of corruption had been reported in 2014 or in 2015.  The Company also stated that no incidents of corruption had been reported in 2015.  These representations were materially

false and misleading in light of the facts that: (i) Cognizant was involved in a bribery scheme in India; (ii) the scheme was facilitated by senior management, including the Company's President, overriding or failing to enforce the much-hyped internal controls; and (iii) Cognizant has admitted that, in truth, its internal controls were materially deficient.

61.     Third, Cognizant overstated its earnings by incorrectly booking its bribe payments as capital expenditures when, in fact, those payments should have been booked as operating expenses and charged against the Company's net income.  In particular, at each reporting period starting from February 27, 2015 with the 2014 Form 10-K, Cognizant overstated its earnings in its publicly filed financial statements by incorrectly booking the bribery payments it made as capital expenditures when, in fact, those payments should have been booked as expenses and charged dollar-for-dollar against the Company's earnings.  Specifically, the Company has stated that at least $4.1 million in corrupt payments were incorrectly capitalized, i.e., shown as increased assets on the balance sheet.  In truth, as Cognizant has admitted, those payments should have been expensed, i.e., shown as increased expenses on the earnings/profit-and-loss statement.  Of this $4.1 million of capitalized expenses, $1 million was expensed as depreciation and amortization.

## THE INDIVIDUAL DEFENDANTS CAUSE COGNIZANT TO REPURCHASE ITS OWN STOCK AT INFLATED PRICES

62.     In breach of their fiduciary duties to Cognizant, and in violation of section 10(b) of the Exchange Act and SEC Rule 10b-5, defendants Patsalos-Fox, Fox, Breakiron-Evans, Mackay, Abdalla, D'Souza, Klein, Chadwick, Narayanan, and Weissman caused or approved of the Company's repurchase of 13.6 million shares of its stock at artificially inflated prices.

63.     Between February 2015 and September 2016, the Company paid over $800 million to repurchase its stock for an average of $59.86 per share.  However, after the announcement of the internal investigation, on September 30, 2016, the Company's stock price fell to $47.71, a drop

of approximately 20%.  Accordingly, Cognizant overpaid for its own stock by approximately $160 million.

64.    In particular, Cognizant made the following repurchases:

| Period | Repurchased Shares | Average Price Per Share | Approximate Aggregate Cost |
|---|---|---|---|
| | | | |
| Feb-15 | 300,000.0 | $62.50 | $18,750,000 |
| Mar-15 | 100,000.0 | $62.10 | $6,210,000 |
| Apr-15 | - | - | - |
| May-15 | 1,400,000.0 | $63.22 | $88,508,000 |
| Jun-15 | 1,000,000.0 | $63.71 | $63,710,000 |
| Jul-15 | - | - | - |
| Aug-15 | 1,000,000.0 | $62.15 | $62,150,000 |
| Sep-15 | 1,500,000.0 | $62.59 | $93,885,000 |
| Oct-15 | - | - | - |
| Nov-15 | 400,000.0 | $64.82 | $25,928,000 |
| Dec-15 | 250,000.0 | $64.65 | $16,162,500 |
| Jan-16 | - | - | - |
| Feb-16 | 1,400,000.0 | $56.36 | $78,904,000 |
| Mar-16 | 2,900,000.0 | $57.13 | $165,677,000 |
| Apr-16 | 630,852.0 | $59.65 | $37,630,322 |
| May-16 | 213,435.0 | $57.95 | $12,368,558 |
| Jun-16 | - | - | - |
| Jul-16 | 866,190.0 | $57.72 | $49,996,487 |
| Aug-16 | 1,650,000.0 | $57.52 | $94,908,000 |
| | | | |
| Total | 13,610,477.0 | $59.86 | $814,787,867 |

**THE COMPANY IS SIGNIFICANTLY DAMAGED AS THE
TRUTH ABOUT ITS FCPA VIOLATIONS IS REVEALED**

65.    In response to the disclosure of the internal investigation, Cognizant's market capitalization swiftly declined.  The Company's stock price fell more than 13%, or $7.29 per share, from $55 per share to $47.71 per share on the year's highest trading volume by far (53.3 million shares).  This one-day decline, by itself, eradicated $4.4 billion in stockholder value.

66.    The Company is now a defendant in a federal securities class action brought on behalf of investors that purchased Cognizant's stock at inflated prices.  The U.S. District Court for

the District of New Jersey denied the defendants' motion to dismiss that action, in substantial part. After making a new motion to dismiss the plaintiff's second amended complaint, the court once again denied the defendants' motion to dismiss on June 5, 2020, finding that the individual defendants' scienter can be imputed to the Company.

67.     In addition, on February 15, 2019, the Company agreed to pay $25 million to the SEC to settle allegations that it violated the FCPA.  That same day, the SEC and U.S. Department of Justice also charged defendants Coburn and Schwartz with violating the FCPA, revealing the true nature of the illegal conspiracy at the Company and the role senior executives played in it, as well as the inadequate internal controls put in place by the Board.

68.     At the time of the February 15, 2019 revelation, the Company had already incurred over $60 million in investigative costs.  Due to indemnification agreements with defendants Coburn and Schwartz, Cognizant is also paying their legal defense costs.  As of January 2020, the Company had already paid $15 million in legal fees just to defend defendant Schwartz.

69.     In addition, as explained further above, the Company has spent over $800 million repurchasing 13.6 million shares of Cognizant stock at inflated prices.

**<u>DERIVATIVE AND DEMAND WRONGFULLY REFUSED ALLEGATIONS</u>**

70.     Plaintiff brings this action derivatively in the right and for the benefit of Cognizant to redress injuries suffered, and to be suffered, by Cognizant as a direct result of breaches of fiduciary duty, waste of corporate assets, unjust enrichment, and violation of securities law, as well as the aiding and abetting thereof, by the Individual Defendants.  Cognizant is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

71.     Plaintiff will adequately and fairly represent the interests of Cognizant in enforcing and prosecuting its rights.

72.     Plaintiff was a stockholder of Cognizant at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Cognizant stockholder.

██████████████████████████████████████████████████████████

73.     Plaintiff made his Litigation Demand on the Board on April 29, 2019, concerning the damage done to the Company as a result of the FCPA violations and the false and misleading statements.  Having presented the Board with substantially similar facts to those alleged in this Complaint, plaintiff demanded that the Board: (i) commence an independent investigation into the matters raised in plaintiff's Litigation Demand; (ii) take any and all appropriate steps for the Company to recover, through litigation if necessary, the damages proximately caused by the directors' and officers' breaches of fiduciary duty; and (iii) implement corporate governance enhancements to prevent a recurrence of the alleged wrongdoing.

74.     On May 1, 2019, plaintiff received a letter from counsel on behalf of the Demand Review Committee.[4]  Counsel stated that the Company formed the Demand Review Committee in March 2017 in order to investigate similar allegations by a stockholder, and that the Demand Review Committee would also review plaintiff's Litigation Demand.  Notably, the May 1, 2019 letter did not mention that the Demand Review Committee had *already* reached the conclusion not to pursue the other stockholder's demand.

75.     Just one month later, on June 13, 2019, plaintiff received the perfunctory Rejection Letter from counsel on behalf the Demand Review Committee.  The Rejection Letter stated that

---

[4] A true and correct copy of the May 1, 2019 letter is attached hereto as Exhibit B.

the Demand Review Committee had already rejected a litigation demand in September 2018 made by a different purported stockholder initiated in December 2016.  The Demand Review Committee concluded that the work done to date had "provided a sufficient basis on which to evaluate and respond to the demand made in the [Litigation Demand]."  As a result, the Demand Review Committee voted to reject the Litigation Demand.

76.      Thus, according to the Rejection Letter sent to plaintiff in June 2019, the Board based its determination to reject the Litigation Demand on the Demand Review Committee's recommendation to reject another stockholder's demand in September 2018.  The Board made this determination despite the substantial events that had occurred since that time.  Most significantly, as described herein, on February 15, 2019, the SEC announced that it charged Cognizant and defendants Coburn and Schwartz with FCPA violations, and that the Company agreed to settle the allegations for $25 million.  Plaintiff provided this information in his Litigation Demand.  Yet, the Board and the Demand Review Committee substantially relied upon this previous investigation in deciding to reject plaintiff's Litigation Demand.

**Plaintiff Sent the Inspection Demand to Investigate the Board's Decision to Reject the Litigation Demand**

77.      On January 28, 2020, plaintiff sent the Inspection Demand to the Company seeking to investigate the Board's perfunctory review of the Litigation Demand.  In keeping with his proper purpose to inspect certain books and records, plaintiff demanded to inspect the following narrowly tailored materials:

1. All meeting minutes of the Board or committee of the Board tasked with reviewing the Demands (the "Review Committee") where the Demands were discussed or evaluated.

2. The meeting minutes of the Board or Review Committee concerning the potential appointment of a special committee tasked with investigating the allegations in the Demands.

3. Any written report or presentation to the Board or Review Committee concerning the Demands.

4. All documents reviewed or relied upon by the Board or Review Committee concerning the Demands.

5. The engagement letters of any experts retained by the Board or Review Committee concerning the Demands.

6. All documents concerning the steps the Board and Company have taken in response to the broader concerns raised by the Demands.

78.     Despite plaintiff's clear legal right to these documents, the Company rejected his Inspection Demand.  After further correspondence between Cognizant and plaintiff, the Company remained steadfast in its refusal to provide plaintiff the documents as legally obligated.

79.     As a result, on February 28, 2020, plaintiff filed an action in the Court of Chancery of the State of Delaware seeking to compel the Company to produce the necessary books and records pursuant to Section 220.  On July 27, 2020, the parties reached an agreement to resolve the Section 220 action.  In particular, the Company agreed to provide plaintiff with the following books and records:

1. All meeting minutes of the Board or committee of the Board tasked with reviewing the Demands (the "Review Committee") where the Demands were discussed or evaluated.

2. The meeting minutes of the Board or Review Committee concerning the potential appointment of a special committee tasked with investigating the allegations in the Demands.

3. Any written report or presentation to the Board or Review Committee concerning the Demands.

4. All documents reviewed or relied upon by the Board or Review Committee concerning the Demands.

5. The engagement letters of any experts retained by the Board or Review Committee concerning the Demands.

80.     On August 28, 2020, the Company finally provided the agreed-upon documents.

██████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████

81.     █████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

82.     Cognizant has asserted that certain documents, or portions of documents, were privileged under the attorney-client or attorney-work product doctrines, and Cognizant provided a privilege log for the withheld documents responsive to plaintiff's Inspection Demand.  ███████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

83.     Ultimately, the Board and the Demand Review Committee, in rejecting plaintiff's Litigation Demand—which detailed six years of wrongdoing in a foreign country, millions of dollars in payments by the Company's top executives, an SEC lawsuit that cost the Company tens of millions of dollars, and inadequate internal controls—███████████████████████████

██████████████████████████████████████████████████



84.

A.

85.

**B.** ████████████████████████████████
████████████████

86.    ████████████████████████████████

████████████    ████████████████████████    ████

████████████████████████████████████████

████████████████████

87.    ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

88.    ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████    ████

████████████████████████████████████████



89.

90.

91.

**C.** ████████████████████████████████

92. ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████

93. ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████



**D.**

94.

95.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

**E.**    ████████████████████████████████████████

96.    ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████

97.    ████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

98.   ████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████

99.     The members of the Board's wrongful rejection of the Litigation Demand for improper purposes constitutes yet another breach of the Individual Defendants' fiduciary duties.

100.    Plaintiff has not made any demand on the other stockholders of Cognizant to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)     Cognizant is a publicly held company with over 530 million shares outstanding and thousands of stockholders as of February 5, 2021;

(b)     making demand on such a number of stockholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of stockholders; and

(c)     making demand on all stockholders would force plaintiff to incur excessive expenses, assuming all stockholders could be individually identified.

**TOLLING OF THE STATUTE OF LIMITATIONS**

101.    Plaintiff had neither actual nor constructive knowledge of the facts constituting his claims for relief until recently.

102.     Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the claims alleged herein until recently, including, most importantly the requisite *mens rea* of the Individual Defendants for the claims detailed herein.

103.     Upon learning of possible wrongdoing by the Company's fiduciaries, plaintiff diligently pursued his right as a stockholder, first demanding to inspect Cognizant's books and records and then making a litigation demand on the Board.  After the Board denied plaintiff's Litigation Demand after ███████████████ it then refused to provide any books and records concerning that denial.  As a result, plaintiff was forced to file an action in the Court of Chancery of the State of Delaware to obtain the books and records that should have been freely given.  The Company did not.

104.     ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

105.     Further, the Individual Defendants' wrongful rejection of plaintiff's Litigation Demand is an action both furthering the previous wrongful behavior and a new breach of fiduciary duty.  Accordingly, this action is timely.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

106.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    The Individual Defendants owed and owe Cognizant fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Cognizant the highest obligation of care and loyalty.

108.    The Individual Defendants and each of them, violated and breached their fiduciary duties.

109.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Cognizant has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

110.    Plaintiff, on behalf of Cognizant, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

111.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

112.    As a result of the wrongdoing described herein, including the Individual Defendants' failure to conduct proper supervision, Cognizant has wasted its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty, bribed foreign officials, and overpaid for its own stock.

113.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

114.    Plaintiff, on behalf of Cognizant, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Unjust Enrichment

115.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

116.   By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Cognizant.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Cognizant.

117.   Plaintiff, as a stockholder and representative of Cognizant, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

118.   Plaintiff, on behalf of Cognizant, has no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 Promulgated Thereunder

119.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

120.   During the period of wrongdoing, the Individual Defendants disseminated or approved false or misleading statements about Cognizant, which they knew or recklessly disregarded were false or misleading and were intended to deceive, manipulate, or defraud.  Those false or misleading statements and defendants' course of conduct artificially inflated the price of the Company's common stock.

121.    While the price of the Company's common stock was inflated due to the false and misleading statements made by Individual Defendants, the Director Defendants caused the Company to repurchase shares of its own common stock at prices that were artificially inflated due to defendants' false or misleading statements.

122.    Individual Defendants violated section 10(b) of the Exchange Act and SEC Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Cognizant in connection with the Company's purchases of Cognizant's stock during the period of wrongdoing.

123.    Individual Defendants, individually and collectively, directly and indirectly, by the use of means or instrumentalities of interstate commerce or of the mail: (i) engaged and participated in a continuous course of conduct that operated as a fraud and deceit upon the Company; (ii) made various false or misleading statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; (iii) made the above statements intentionally or with a severely reckless disregard for the truth; and (iv) employed devices, and artifices to defraud in connection with the purchase and sale of Cognizant stock, which were intended to, and did deceive Cognizant and its stockholders.   Throughout the period of wrongdoing, defendants were in possession of material, nonpublic information regarding the above.

124.    Individual Defendants were among the senior management and the directors of the Company, and were therefore directly responsible for, and are liable for, all improper statements made during the period of wrongdoing, as alleged above.

125.    As described above, the Individual Defendants acted with scienter throughout the period of wrongdoing, in that they acted either with intent to deceive, manipulate, or defraud, or with severe recklessness.  The misstatements and omissions of material facts set forth in this Complaint were either known to Individual Defendants or were so obvious that defendants should have been aware of them.  Throughout the period of wrongdoing, defendants also had a duty to disclose new information that came to their attention and rendered their prior statements to the market materially false or misleading.

126.    The Individual Defendants' false or misleading statements and omissions were made in connection with the purchase or sale of the Company's stock.

127.    As a result of the Individual Defendants' misconduct, Cognizant has and will suffer damages in that it paid artificially inflated prices for its own common stock and suffered losses when the previously undisclosed facts relating to the wrongdoing was disclosed.

128.    Cognizant would not have purchased these securities at the prices it paid, or at all, but for the artificial inflation in the Company's stock price caused by the Individual Defendants' false or misleading statements.

129.    As a direct and proximate result of the Individual Defendants' wrongful conduct, the Company suffered damages in connection with its purchases of Cognizant stock during the period of wrongdoing.  By reason of such conduct, defendants are liable to the Company pursuant to section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

130.    Plaintiff brings this claim within two years of his discovery of the facts constituting the violation and within five years of the violation.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Cognizant, demands judgment as follows:

A.    Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, unjust enrichment, and violation of securities law;

B.    Directing Cognizant to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Cognizant and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.    a proposal to strengthen the Company's controls over foreign operations, including adherence to the FCPA;

2.    a proposal to strengthen the Company's controls over accounting and financial reporting;

3.    a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

4.    a proposal to review and implement policies and procedures for escalating internal and regulatory issues internally and to the Board;

5.      a proposal to review and implement the confidential reporting structure and investigative process of complaints within the company; and

6.      a provision to permit the stockholders of Cognizant to nominate at least three candidates for election to the Board;

C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Cognizant has an effective remedy;

D.      Awarding to Cognizant restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

E.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: June 1, 2021                     HERMAN JONES LLP

                                        /s/Serina M. Vash
                                        SERINA M. VASH (NJ Bar. No. 041142009)
                                        153 Central Avenue #131
                                        Westfield, NJ 07090
                                        svash@hermanjones.com
                                        Telephone: (404) 504-6516
                                        Facsimile: (404) 504-6501

                                        ROBBINS LLP
                                        BRIAN J. ROBBINS*
                                        STEPHEN J. ODDO*
                                        ERIC M. CARRINO*
                                        5040 Shoreham Place
                                        San Diego, CA 92122
                                        Telephone: (619) 525-3990
                                        Facsimile: (619) 525-3991

Attorneys for Plaintiff

*pro hac vice motions to be filed*

1479556