# Exhibit A



5040 Shoreham Place
San Diego, CA 92122
619.525.3990 phone
619.525.3991 fax
www.robbinsarroyo.com

April 29, 2019

**VIA FEDEX OVERNIGHT**

Board of Directors
COGNIZANT TECHNOLOGY SOLUTIONS CORP.
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, NJ 07666

   Re: **Cognizant Technology Solutions Corp. Stockholder Litigation Demand**

Dear Board of Directors:

  We write on behalf of our client, Viswanatha Palempalli, a beneficial owner of Cognizant Technology Solutions Corporation ("Cognizant" or the "Company") stock. Our client demands that Cognizant's Board of Directors (the "Board") investigate, address, remedy, and commence proceedings against certain of the Company's current and former officers and directors for breach of fiduciary duty, violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), violations of the Foreign Corrupt Practices Act ("FCPA"), waste of corporate assets, unjust enrichment, and violations of all other applicable laws, rules, and regulations related to the wrongdoing alleged in this demand, as detailed below. The illegal scheme detailed herein caused and will continue to cause great harm to the Company.

## COGNIZANT'S FCPA VIOLATIONS AND ASSOCIATED MISREPRESENTATIONS

  Cognizant's senior management violated the law by bribing Indian officials in exchange for benefits from the Indian government through the use of "Special Economic Zones" ("SEZs"). SEZs provide special tax exemptions and holidays, and decreased business regulations, infrastructure, and credit opportunities. Because of their benefits, SEZ licenses are difficult to obtain.

  As set forth below, Cognizant bribed officials to reap the SEZ benefits, while the Company represented to investors at all times that it had not violated any laws to obtain the benefits, nor committed any impropriety in annual Sustainability Reports which reported no incidents of corruption. The Sustainability Reports were disseminated publicly via Cognizant's website in 2014 and 2015. The Company also made these or similar misrepresentations to the U.S. Securities and Exchange Commission (the "SEC") through its Annual and Quarterly Reports, and Cognizant's financial results were also affected due to the benefit provided by the illegally obtained SEZ licenses.

## COGNIZANT'S FALSE STATEMENTS

  Cognizant's false statements fall into three categories: (i) false statements concerning the financial investment and benefits from the SEZs; (ii) false statements concerning the Company's



Case 2:21-cv-12025-KM-CLW   Document 1-1   Filed 06/01/21   Page 3 of 7 PageID: 44

*Cognizant Technology Solutions Corp. Stockholder Litigation Demand*
Page 2

anticorruption compliance and training; and (iii) the overstatement of earnings by capitalizing bribes that should have been expenses.

First, in the Company's SEC filings, it reported the benefits and investments Cognizant made in SEZs—figures that were overstated because they included several million dollars' worth of illicit payments to Indian government officials. In particular, Cognizant's 2014 Annual Report on Form 10-K filed with the SEC on February 27, 2015 (the "2014 Form 10-K"), described the "income tax holiday benefits" that Cognizant's "Indian subsidiaries" had received from the "Indian government" as follows:

> Our Indian subsidiaries collectively referred to as Cognizant India, are primarily export-oriented and are eligible for certain income tax holiday benefits granted by the Indian government for export activities conducted within Special Economic Zones, or SEZs, for periods of up to 15 years. Changes in Indian tax laws that would reduce or deny SEZ tax benefits could have a material adverse effect on our business, results of operations and financial condition.

\* \* \*

> [A]s of December 31, 2014, we had outstanding fixed capital commitments of approximately $20,452 [in thousands] related to our India real estate development program to build new Company-owned state-of-the-art [information technology ("IT")] development and delivery centers. ... [W]e have constructed and expect to continue to locate most of our newer development facilities in SEZs.

On May 4, 2015, Cognizant filed its Quarterly Report on Form 10-Q for the first quarter of fiscal 2015 with the SEC, which repeated the statements from the 2014 Form 10-K. The Company continued to repeat these statements in each quarterly report thereafter until the scheme was revealed in late 2016.

On February 25, 2016, the Company filed its 2015 Annual Report on Form 10-K with the SEC (the "2015 Form 10-K"). In addition to repeating the statements referenced above, the Company quantified the "effect of the income tax holidays granted by the Indian government" as follows:

> For the years ended December 31, 2015, 2014 and 2013, the effect of the income tax holidays granted by the Indian government was to reduce the overall income tax provision and increase net income by approximately $201.4 million, $183.0 million and $146.3 million, respectively, and increase diluted [earnings per share] by $0.33, $0.30 and $0.24, respectively.

Second, the Company claimed in its Sustainability Reports publicly disseminated via Cognizant's website in 2014 and 2015, that it had established robust policies and procedures to ensure legal and ethical compliance, including extensive training and "risk analysis surveys covering all business units and corporate functions to assess the likelihood of various risks

Case 2:21-cv-12025-KM-CLW   Document 1-1   Filed 06/01/21   Page 4 of 7 PageID: 45

*Cognizant Technology Solutions Corp. Stockholder Litigation Demand*
Page 3

including corruption." Based on these representations, the Company specifically stated that no confirmed incidents of corruption had been reported in 2014 or in 2015. The Company also stated that no incidents of corruption had been reported in 2015. These representations were materially false and misleading in light of the facts that: (i) Cognizant was involved in a bribery scheme in India; (ii) the scheme was facilitated by senior management, including the Company's President, overriding or failing to enforce the much-hyped internal controls; and (iii) Cognizant has admitted that, in truth, its internal controls were materially deficient.

Third, Cognizant overstated its earnings by incorrectly booking its bribe payments as capital expenditures when, in fact, those payments should have been booked as operating expenses and charged against the Company's net income. In particular, at each reporting period starting from February 27, 2015 with the 2014 Form 10-K, Cognizant overstated its earnings in its publicly filed financial statements by incorrectly booking the bribery payments it made as capital expenditures when, in fact, those payments should have been booked as expenses and charged dollar-for-dollar against the Company's earnings. Specifically, the Company has stated that at least $4.1 million in corrupt payments were incorrectly capitalized, i.e., shown as increased assets on the balance sheet. In truth, as Cognizant has admitted, those payments should have been expensed, i.e., shown as increased expenses on the earnings/profit-and-loss statement. Of this $4.1 million of capitalized expenses, $1 million was expensed as depreciation and amortization.

## THE COMPANY IS SIGNIFICANTLY DAMAGED AS THE TRUTH ABOUT ITS FCPA VIOLATIONS IS REVEALED

Cognizant admits it violated the FCPA. On September 30, 2016, Cognizant announced an internal investigation regarding improper payments made to foreign officials in violation of the FCPA "and other applicable laws." The press release announced that the Company's President, Gordon Coburn ("Coburn"), resigned from his position as of September 27, 2016, without explanation after twenty years of senior management at Cognizant. In its Quarterly Report on Form 10-Q for the third quarter of fiscal 2016, filed with the SEC on November 7, 2016, Cognizant admitted that:

> [W]e did not maintain an effective tone at the top as certain members of senior management may have participated in or failed to take action to prevent the making of potentially improper payments by either overriding or failing to enforce the controls established by the Company relating to real estate and procurement principally in connection with permits for certain facilities in India.

On an earnings conference call on February 8, 2017, the Company disclosed it found yet additional improper payments. It explained that the total amount of improper payments reached $6 million. Further, in the 2016 Annual Report on Form 10-K filed with the SEC on March 1, 2016, Cognizant disclosed that the bribery scheme began in 2010.

Case 2:21-cv-12025-KM-CLW   Document 1-1   Filed 06/01/21   Page 5 of 7 PageID: 46

*Cognizant Technology Solutions Corp. Stockholder Litigation Demand*
Page 4

In response to these disclosures, Cognizant's stock price swiftly declined. The Company's stock price fell more than 13%, or $7.29 per share, from $55 to $47.71 per share on the year's highest trading volume by far (53.3 million shares). This one-day decline, by itself, eradicated $4.4 billion in stockholder value.

The Company is now subject to a securities fraud class action brought on behalf of investors that purchase Cognizant's stock at inflated prices. The U.S. District Court for the District of New Jersey recently denied the defendants' motion to dismiss that action.

In addition, on February 15, 2019, the Company agreed to pay $25 million to the SEC to settle allegations that it violated the FCPA. The SEC also charged two of the Company's former executives with violating the FCPA that same day.

## DAMAGES TO COGNIZANT

Cognizant has expended and will continue to expend significant sums of money as a direct and proximate result of the misconduct described herein. Such expenditures include, but are not limited to, the costs from the Company's internal investigations, settlement with the SEC, the costs incurred investigating and defending Cognizant and certain officers and directors in the class action lawsuit for violations of securities laws, plus potentially hundreds of millions of dollars in settlement or to satisfy an adverse judgment, and costs incurred from compensation and benefits wrongly paid to individuals who breached their fiduciary duties to the Company.

Further, the Board's inability to implement and maintain adequate internal controls over financial reporting and the Company's failure to timely disclose material information exposes Cognizant to significant reputational damage within both the business community and the capital markets. In addition to price and product quality, Cognizant's current and potential customers consider a company's ability to curb known abuses and implement adequate controls to ensure illegal practices are timely discovered and properly addressed. Customers are less likely to do business with companies that knowingly permit or encourage unscrupulous behavior, and investors are less likely to invest in companies that lack internal controls and fail to timely disclose material information. Cognizant's ability to attract customers and investors is now impaired. In addition, the Company's ability to raise equity capital or debt on favorable terms in the future is now impaired. Cognizant stands to incur higher marginal costs of capital and debt due to the increases of the perceived risks of investing in and lending money to the Company.

## STOCKHOLDER DEMAND

Given the above, Mr. Palempalli demands that the Board take all necessary steps to investigate, address, and promptly remedy the harm inflicted upon Cognizant as a result of the misconduct described herein. In particular, our client demands that the Board investigate the circumstances surrounding Cognizant's false and misleading statements and violations of any applicable laws, rules, and regulations. In addition, our client demands that the Board investigate any other violations of applicable laws, rules, and regulations. Accordingly, the Board must undertake an investigation of the wrongdoing detailed herein by independent and disinterested

Case 2:21-cv-12025-KM-CLW   Document 1-1   Filed 06/01/21   Page 6 of 7 PageID: 47

*Cognizant Technology Solutions Corp. Stockholder Litigation Demand*
Page 5

directors with the assistance of independent outside legal counsel. The investigation should, among other things, be sufficient to determine:

    (a)    which current or former Company employees, officers, and/or directors were responsible for, and/or had knowledge of the Company's inadequate internal controls over financial reporting;

    (b)    which current or former Company employees, officers, and/or directors were responsible for, had knowledge of, and/or played an active role in the Company's failure to comply with applicable laws;

    (c)    which current or former Company employees, officers, directors, and/or agents were responsible for, had knowledge of, and/or played an active role in the Company's false and misleading disclosures;

    (d)    which Company employees, officers, directors, and/or agents, current or former, were responsible for, had knowledge of, and/or played an active role in oversight of all of the forgoing;

    (e)    the extent to which the current or former Company employees, officers, directors, and/or agents benefited as a result of the breaches of fiduciary duty owed to the Company and its stockholders; and

    (f)    the extent to which Cognizant was damaged by all of the foregoing.

Following the investigation, our client demands that the Company commence legal proceedings against each party identified as being responsible for the mismanagement and other related misconduct described above. The legal proceedings should bring claims for breaches of fiduciary duty and indemnification and contribution, among other relevant and appropriate claims. The legal proceedings should also seek recovery of the salaries, bonuses, director remuneration, and other compensation paid to the parties responsible because these parties were unjustly enriched by such compensation.

The Board must commence these legal proceedings as expeditiously as possible, keeping in mind the relevant statute of limitations periods. Because of concern that the proceedings cannot be initiated prior to the expiration of the relevant statute of limitations, the Board should secure tolling agreements from all potential defendants, which will allow the Board to complete its investigation and pursue all appropriate legal remedies. Moreover, to the extent that relevant statute of limitations periods expire prior to the Board commencing legal proceedings or obtaining tolling agreements, the Board must investigate and pursue claims for breaches of fiduciary duties and/or legal malpractice against those who allowed any statute of limitations periods to expire.

Case 2:21-cv-12025-KM-CLW   Document 1-1   Filed 06/01/21   Page 7 of 7 PageID: 48

*Cognizant Technology Solutions Corp. Stockholder Litigation Demand*
Page 6

Finally, the Board must take all necessary actions to reform and improve its corporate governance and internal procedures to comply with all applicable laws and to protect Cognizant from committing future wasteful acts. Additionally, any future resolutions to the Company's Bylaws or Articles of Incorporation should be put to a stockholder vote, and the following actions may be necessary to ensure proper corporate governance policies:

(a) a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

(b) a proposal to strengthen the Company's controls over Cognizant's accounting and financial reporting

(c) a proposal to strengthen the Company's FCPA controls;

(d) a proposal to strengthen the Company's disclosure controls;

(e) a provision to establish a system for intake of employee complaints regarding potential violations of laws occurring at the Company; and

(f) a provision to permit the stockholders of Cognizant to nominate at least three independent candidates for election to the Board.

Should you have any questions or concerns about this matter, please do not hesitate to contact me.

Sincerely,

Gregory E. Del Gaizo

1353510