UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VISWANATHA PALEMPALLI, Derivatively on Behalf of COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION**<br><br>　　Plaintiff,<br><br>　　v.<br><br>**MICHAEL PATSALOS-FOX, JOHN N. FOX, JR., MAUREEN BREAKIRON-EVANS, LEO S. MACKAY, JR., ZEIN ABDALLA, FRANCISCO D'SOUZA, KAREN MCLOUGHLIN, RAJEEV MEHTA, GORDON J. COBURN, STEVEN SCHWARTZ, RAMAKRISHNAN CHANDRASEKARAN, JOHN E. KLEIN, JONATHAN CHADWICK, THOMAS M. WENDEL, LAKSHMI NARAYANAN, and ROBERT E. WEISSMAN,**<br><br>　　Defendants,<br><br>　　-and-<br><br>**COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, a Delaware Corporation,**<br><br>　　Nominal Defendant. | Civ. No. 21-12025 (KM) (CLW)<br><br>**OPINION (Redacted)** |

**KEVIN MCNULTY, U.S.D.J.:**

　　Plaintiff Viswanatha Palempalli, a shareholder of Cognizant Technology Solutions Corporation ("Cognizant"), brought this derivative action against certain current and former members of Cognizant's Board of Directors ("Board"), as well as several current and former executive officers of the company, for breach of fiduciary duty, waste of corporate assets, unjust

enrichment, and violation of section 10(b) of the Exchange Act and SEC Rule 10b-5. (DE 1.)[1] All defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 23.1, asserting that Palempalli cannot show that the Board wrongfully refused his litigation demand. (DE 26; DE 28.)[2] In addition, all defendants argue that the claims against them should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth below, the motions to dismiss are **DENIED** without prejudice.

## I.   BACKGROUND

I recite the facts as pled in the complaint, assuming them to be true for purposes of this motion. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (2009). Cognizant is a corporation that helps companies to outsource their information technology and other business practices. (Compl. ¶¶ 21, 48.) Cognizant is incorporated in Delaware and based in New Jersey; however, more than half of Cognizant's employees are located in India. (*Id.*)

Palempalli is a Cognizant stockholder. (*Id.* ¶ 20.) Among the defendants are eleven individuals who were current or former members the Board at the time the action was commenced: Michael Patsalos-Fox, John N. Fox, Maureen Breakiron-Evans, Leo S. Mackay, Jr., Zein Abdalla, Francisco D'Souza, John E. Klein, Jonathan Chadwick, Thomas M. Wendel, Lakshmi Narayanan, and

---

[1]   Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Complaint (DE 1)

Mot. = Memorandum of Law in Support of Motion to Dismiss filed by defendants Michael Patsalos-Fox, John N. Fox, Jr., Maureen Breakiron-Evans, Leo S. Mackay, Jr., Zein Abdalla, Francisco D'Souza, Karen McLoughlin, Rajeev Mehta, Ramakrishnan Chandrasekaran, John E. Klein, Jonathan Chadwick, Thomas M. Wendel, Lakshmi Narayanan, Robert E. Weissman, and Cognizant Technology Solutions Corporation (DE 52)

Opp. = Opposition to Motion to Dismiss filed by Viswanatha Palempalli (DE 54)

[2]   Defendants Gordon J. Coburn and Steven Schwartz join in the portion of Cognizant's brief that moves to dismiss the complaint under Rule 23.1. (DE 26-1 p. 1.)

Robert E. Weissman. (*Id.* ¶¶ 22–27, 33–37.) The defendants also include five current or former executive officers: Karen McLoughlin, Rajeev Mehta, Gordon Coburn, Steven Schwartz, and Ramakrishnan Chandrasekaran. (*Id.* ¶ 28–32.) Cognizant itself is a nominal defendant. (*Id.* ¶ 21.)

### A. The Bribery Scheme

In September 2016, Cognizant announced an internal investigation into improper payments made to foreign officials in violation of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, 15 U.S.C. §§ 78dd-1, *et seq.*, and other applicable laws. (*Id.* ¶ 49.) The announcement also stated that Coburn, Cognizant's president, had resigned. (*Id.*) In the months that followed, Cognizant disclosed that certain members of its senior management had engaged in a bribery scheme in India related to real estate and the procurement of permits for certain facilities. (*Id.* ¶¶ 49–50.) The scheme dated back to 2010 and allegedly involved $6 million in improper payments. (*Id.* ¶ 50.)

In addition, the Securities and Exchange Commission ("SEC") charged Cognizant, Coburn, and Schwartz with FCPA violations. (*Id.* ¶ 51.) The alleged misconduct included bribes to officials in India, false and misleading statements made in reports filed with the SEC, and false representations to Cognizant's auditor. (*Id.* ¶¶ 51–52.) The SEC and Cognizant have since reached a settlement. (*Id.* ¶ 67.) The criminal action against Coburn and Schwartz is ongoing. *See USA v. Coburn*, 2:19-cr-120-KM (the "DOJ Action").

### B. Damage to Cognizant

Between February 2015 and September 2016, Cognizant repurchased 13.6 million shares of its stock at an average cost of $59.86 per share, totaling over $800 million. (Compl. ¶¶ 62–63.) Then, following the announcement of the internal investigation in September 2016, Cognizant's stock price fell to $47.71 per share; in plaintiffs' view, this drop in price meant that Cognizant overpaid for its own stock by about $160 million. (*Id.* ¶ 63.) Additionally, Cognizant agreed to pay $25 million to the SEC to settle the allegations that it violated the

FCPA (the "SEC Settlement"). (*Id.* ¶ 67.) Cognizant has incurred over $60 million in investigative costs. (*Id.* ¶ 68.) Pursuant to an indemnification agreement, Cognizant is also paying Coburn and Schwartz's legal defense costs. (*Id.*) As of January 2020, Cognizant has paid $15 million for Schwartz's legal fees. (*Id.*)

### C. The Litigation Demand

Cognizant received three litigation demands related to the bribery scheme, the first of which the Board received in December 2016 (the "Carder Demand").[3] (*Id.* ¶ 75.) The Board met in March 2017 to discuss the Carder Demand, during which it appointed a Demand Review Committee to investigate the claims. (*Id.* ¶ 85.) The Demand Review Committee conducted its investigation with the assistance of outside counsel and met with outside counsel several times. (*Id.* ¶¶ 86–91.) In September 2018, the Demand Review Committee recommended that the Board reject the Carder Demand. (*Id.* ¶ 91.) The Board met with the Demand Review Committee in December 2018 and decided to follow the recommendation to reject the demand. (*Id.* ¶ 92.)

In March 2019, the Board received its second demand. (*Id.* ¶ 94.) The Demand Review Committee met on April 17, 2019 to discuss that demand. (*Id.*) Then, Palempalli sent his litigation demand on April 29, 2019 (the "Palempalli Demand"). (*Id.* ¶ 95.) On May 1, 2019, the Demand Review Committee advised Palempalli's counsel that Cognizant had established a Demand Review Committee in response to similar allegations made by another stockholder, and that the same Demand Review Committee would review the Palempalli Demand. (*Id.* ¶ 74.) The Demand Review Committee met on May 9, 2019, to

---

[3] For consistency, the court adopts the naming convention used in the briefs and attachments. Because certain background facts are redacted in the complaint, but not in defendants' publicly filed briefing, I have cited them in unredacted form. At pp. 7 and 8 of the unredacted opinion, I have highlighted references to facts and contentions that remain sealed and nonpublic; I have filed a second, redacted version of the opinion that omits those passages.

discuss the two litigation demands. (*Id.* ¶ 94.) On May 14, 2019, the Board met and rejected both litigation demands. (*Id.* ¶¶ 96–97.)

On June 13, 2019, the Demand Review Committee sent Palempalli a letter rejecting his demand. (*Id.* ¶ 75.) The letter stated that the Demand Review Committee had previously reviewed and rejected the Carder Demand, and that the earlier investigation "provided a sufficient basis on which to evaluate and respond to" Palempalli's litigation demand. (*Id.* ¶ 75; DE 1-3.) According to Palempalli, the Demand Review Committee impermissibly failed to consider subsequent intervening events that he cited, such as the SEC Settlement or the DOJ Action.[4] (Compl. ¶ 76.) Plaintiff filed this action on June 1, 2021, alleging, among other things, that the Board wrongfully refused his litigation demand. (*Id.* ¶ 16.) Defendants have moved to dismiss the complaint under Rule 23.1, asserting that Palempalli cannot show that the Board wrongfully refused his litigation demand.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 23.1 requires "a plaintiff to plead with particularity either the efforts made to spur directors to take the action sought, and why these efforts were unsuccessful, or the reasons why no effort was made to demand action from the board." *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007). When a shareholder brings a derivative action in federal court, the federal procedural requirement of particularized pleading applies in conjunction with state substantive law. *See In re Merck & Co., Inc. Securities, Derivative & ERISA Litig.*, 493 F.3d 393, 399 (3d Cir. 2007). Because Cognizant is a Delaware corporation, Delaware law governs the analysis of the Board's demand refusal in this case. *See Coyer v. Hemmer*, 901 F. Supp. 872, 882 (D.N.J. 1995).

---

[4]   The Palempalli Demand states: "ln addition, on February 15, 2019, the Company agreed to pay $25 million to the SEC to settle allegations that it violated the FCPA. The SEC also charged two of the Company's former executives with violating the FCPA that same day." (DE 1-1.)

5

Where, as here, a shareholder makes a demand on the board of directors and the demand is refused, that refusal is subject to judicial review under the business judgment rule. *Spiegel v. Buntrock*, 571 A.2d 767, 774 (Del. 1990). Under the business judgment rule, the court considers the board of directors' "independence, the reasonableness of its investigation and good faith." *Id.* at 777. By making a demand on the board of directors, the shareholder "tacitly concedes the independence of a majority of the board to respond." *Id.*

A board of directors' decision to refuse the demand "should only be set aside if particularized facts are pled supporting an inference that the committee, despite being comprised solely of independent directors, breached its duty of loyalty, or breached its duty of care, in the sense of having committed gross negligence." *Espinoza on behalf of JPMorgan Chase & Co. v. Dimon*, 124 A.3d 33, 36 (Del. 2015). The "gross negligence" inquiry focuses on whether the directors considered "all material information reasonably available to them." *Friedman v. Maffei*, No. CV 11105-VCMR, 2016 WL 1555331, at *10 (Del. Ch. Apr. 13, 2016) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). The question is "whether the Board was grossly negligent in failing to inform itself, or intentionally acted in disregard of the Company's best interests in deciding not to pursue the litigation the Plaintiff demanded." *Zucker v. Hassell*, No. CV 11625-VCG, 2016 WL 7011351, at *8 (Del. Ch. Nov. 30, 2016), *aff'd*, 165 A.3d 288 (Del. 2017).

### B. Reasonable and Good Faith Investigation

Palempalli asserts that the Board's investigation of his demand was grossly negligent because the Board failed to inform itself of all material information related to the demand. Specifically, Palempalli argues that the Board did not assess (1) the DOJ Action; (2) the SEC Settlement; (3) Palempalli's request for tolling agreements; or (4) the implementation of suggested corporate governance reforms. (Opp. p. 18.) Palempalli's position is that the Board's refusal of his demand was based solely on its investigation into the Carder Demand, which predated and did not involve those enumerated

issues, and the Board did not conduct an additional investigation. (*Id.*) Palempalli also requests limited discovery bearing on the Board's investigation and refusal of his demand. (*Id.* pp. 29–30.)

Palempalli's position has some merit. True, the Board was not required to repeat its investigation into allegations duplicating those raised in the Carder Demand. *See Palkon v. Holmes*, No. 2:14-CV-01234 SRC, 2014 WL 5341880, at *2 (D.N.J. Oct. 20, 2014). But the Palempalli Demand also included additional, relevant issues that arose after the Board completed its investigation of the Carder Demand, and Palempalli has alleged specific facts indicating that the Board may not have investigated those issues. *Cf. Kops v. Hassell*, No. CV 11982-VCG, 2016 WL 7011569, at *3 (Del. Ch. Nov. 30, 2016) (finding that the meeting minutes specifically stated that the board considered the subsequent developments raised in the plaintiff's demand and rejecting the plaintiff's argument that the board of director's investigation was unreasonable).

The first and only time the Demand Review Committee met to discuss Palempalli's demand was on May 9, 2019. XXXXXXXXXXXXXXXXXXXXX

**[Redacted]**

XXXXXXXXXXXXXXX Additionally, the Board's letter refusing the Palempalli Demand supports Palempalli's position that the Board based its decision solely on the prior Carder Demand and did not conduct an additional investigation. The letter states that "[e]ach of the allegations in the Palempalli Demand has been previously investigated by the [Demand Review] Committee . . . in connection with [the Carder Demand]"; "the work done to date, including the prior work carried out in connection with the Carder Demand, has provided a sufficient basis on which to evaluate and respond to the demands made in the

Palempalli Demand"; and "incurring additional investigative expense is neither necessary nor in the best interest of Cognizant and its stockholders." (DE 1-3.)

Defendants respond that the Board was aware of the SEC Settlement as early as October 2018—prior to the Board's refusal of the Carder Demand in December 2018 and the Board's receipt of the Palempalli Demand in April 2019. (Mot. pp. 13, 20.) However, the Demand Review Committee concluded its investigation of the Carder Demand in September 2018. (DE 1-3 p. 3; *see also id.* at pp. 9–10.) Similarly, defendants argue that the Demand Review Committee was retained for at least another year following the refusal of the Carder Demand to receive updates from counsel concerning additional facts that may bear on the Demand Review Committee's previous work related to the Carder Demand. (Mot. p. 9.) XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

**[Redacted]**


XXXXXXXXX Defendants also refer to "follow-up work" conducted by counsel in response to the second demand, which the Demand Review Committee discussed during its May 9th meeting. (Mot. p. 21.) However, such "follow-up work" was requested prior to the Board's receipt of the Palempalli Demand, and defendants do not state what that "follow-up work" was or whether it related to the DOJ Action or the SEC Settlement.

The issues surrounding the demand are threshold issues. Having considered the parties' arguments, I find that additional discovery is needed to determine whether the Board wrongfully refused the Palempalli Demand. *See Fagin v. Gilmartin*, 432 F.3d 276, 285 n. 2 (3d Cir. 2005). Without more information regarding the Board's investigation, I cannot assess the reasonableness of that investigation. Within 7 days, the parties shall confer with Magistrate Judge Waldor to set a schedule for limited discovery related to the issue of the wrongfulness, or not, of the Board's refusal of the Palempalli Demand. After the conclusion of such limited discovery, the parties shall file targeted motions for summary judgment on the issue of the wrongful refusal,

again on a schedule to be determined under the direction of the Magistrate Judge.

In the meantime, the motions to dismiss are administratively terminated without prejudice. Defendants may renew the contentions in their motions to dismiss under Rule 12(b)(6) following a decision on the motions for summary judgment, if necessary.

### III. CONCLUSION

For the reasons set forth above, the motions to dismiss are denied without prejudice. A separate order will issue.

Dated: November 30, 2022

/s/ Kevin McNulty

**Hon. Kevin McNulty
United States District Judge**